JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JANICE REYES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>STAPLES THE OFFICE SUPERSTORE, LLC, and DOES 1 through 100, inclusive,<br><br>　　　　Defendants. | Case No.: CV 19-07086-CJC(SKx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [Dkt. 10]** |

## I. INTRODUCTION

On June 6, 2019, Plaintiff Janice Reyes brought an action against Staples the Office Superstore, LCC ("Staples") and Does 1 through 100 in Los Angeles Superior Court. (Dkt. 1-3 [Complaint, hereinafter "Compl."].) Before the Court is Plaintiff's

motion to remand. (Dkt. 10 [hereinafter "Mot."].) For the following reasons, the motion is **GRANTED**.[1]

## II. BACKGROUND

The allegations in Plaintiff's complaint arise from an altercation that occurred while she was working at Staples's East Hollywood location on February 1, 2018. That morning, two women named Sherri Shepard and Kim Tavares allegedly entered Staples and asked Plaintiff if there was a restroom in the store. (Compl. ¶ 9.) Plaintiff, who allegedly believed that the restrooms were closed for maintenance, related this information to the customers and suggested they try another store. (*Id.*) A few minutes later, Plaintiff's supervisor told her that the two women were accusing her of being a racist for not letting them use the restroom. (*Id.* ¶ 10.) Ms. Shepard is African-American and Ms. Tavares's race is not disclosed in the pleadings. (*Id.* ¶ 17.) The Plaintiff is Hispanic. (*Id.* ¶ 43.)

A few minutes later, Plaintiff returned to her post at a checkout aisle and saw Ms. Shepard and Ms. Tavares standing in her line. (*Id.* ¶ 11.) Plaintiff's supervisor, who was aware that the women were angry with Plaintiff, allegedly saw them approaching but did nothing. (*Id.*) As Ms. Shepard and Ms. Tavares were checking out, they allegedly began berating Plaintiff, calling her a racist and a liar for telling them that the bathroom was out of order when it was not. (*Id.* ¶¶ 12–17.) This altercation allegedly lasted for several minutes without Plaintiff's supervisor intervening. (*Id.* ¶ 18.) Eventually, Plaintiff said, "I'm not taking this shit," and left the checkout counter. (*Id.*) Later that day, Plaintiff learned that Ms. Shepard was a celebrity and that her assistant had been making calls to

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for September 16, 2019, at 1:30 p.m. is hereby vacated and off calendar.

Staples's corporate office, requesting that Plaintiff be terminated for racial profiling. (*Id.* ¶ 21.) Ms. Shepard also posted a video on Instagram making similar accusations. (*Id.* ¶ 22.)

Staples, allegedly feeling pressure to take action due to Ms. Shepard's celebrity status, investigated the incident over the next few days. (*Id.* ¶¶ 23–24.) Plaintiff discussed the matter with a Staples corporate employee over the phone and provided a statement. (*Id.*) When Plaintiff arrived at work on February 6, 2018, her manager informed her that she had been terminated by corporate for swearing in front of a customer. (*Id.* ¶ 26.) Plaintiff alleges that this given reason was pretextual and that she was actually terminated because of Ms. Shepard's allegations of racial profiling. (*Id.* ¶ 27.) Following her termination, Plaintiff exhausted her administrative remedies with the California Department of Fair Employment and Housing ("DFEH") and received a notice of the right to sue on June 11, 2018. (*Id.* ¶¶ 29–30.)

Plaintiff's sued Staples in Los Angeles Superior Court, asserting a number of violations of California law including (1) violation of the California Fair Employment and Housing Act's ("FEHA") prohibition of harassment in employment on the basis of race, (2) violation of FEHA's prohibition of discrimination in employment on the basis of race, (3) failure to remedy and prevent discrimination and harassment, (4) wrongful termination, and (5) negligent retention and supervision. (*See generally id*.) On August 14, 2019, Staples removed the case to federal court, invoking diversity jurisdiction. (Dkt. 1 [Notice of Removal, hereinafter "NOR"].) Plaintiff then filed a motion to remand the case to Los Angeles Superior Court.

## III. DISCUSSION

A civil action brought in state court may be removed by the defendant to a federal district court if the action could have been brought there originally. 28 U.S.C. § 1441(a). The burden of establishing subject matter jurisdiction falls on the defendant, and the removal statute is strictly construed against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* Federal district courts have diversity jurisdiction over suits where more than $75,000 is in controversy if the citizenship of each plaintiff is different from that of each defendant. 28 U.S.C. § 1332(a). The parties dispute both (a) whether there is complete diversity between the parties and, (b) whether the amount in controversy has been met. The Court will address each issue in turn.

### A. Complete Diversity

The parties first dispute whether there is complete diversity of citizenship. Federal courts only have diversity jurisdiction over a matter when the parties are completely diverse. 28 U.S.C. § 1332(a). Plaintiff, a California citizen, alleges that complete diversity is not present here due to her claims against Doe Defendants, who she alleges are also California citizens. Staples asserts that Plaintiff's inclusion of "Does 1 through 100" cannot be used to destroy complete diversity. On this point, the Court agrees with Staples.

In 1987, the Ninth Circuit held "the presence of Doe defendants . . . destroys diversity and, thus, precludes removal." *Bryant v. Ford Motor Co.*, 844 F.2d 602, 605 (9th Cir. 1987). Congress swiftly abrogated this decision by amending the removal statute. *See* 28 U.S.C. § 1447(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of

defendants sued under fictitious names shall be disregarded."). Since these amendments, the rule has been clear. "The citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant." *Soliman v. Philip Morris Inc.*, 311 F.3d 966, 971 (9th Cir. 2002). Here, Plaintiff has not sought to substitute any named defendants. Accordingly, the unnamed Doe Defendants in Plaintiff's complaint cannot be used to destroy complete diversity. Absent the Does, Plaintiff does not dispute that the parties are completely diverse. For diversity purposes, Plaintiff is a citizen of California and Staples is a citizen of Delaware and Massachusetts, so there is complete diversity between the parties.

### B. Amount in Controversy

The parties next dispute whether the amount in controversy exceeds $75,000. Plaintiff's complaint does not include a specific damages figure. "When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014). When a defendant invokes diversity jurisdiction and "the complaint does not contain any specific amount of damages sought, the [defendant] bears the burden of showing, by a preponderance of the evidence, that the amount in controversy exceeds the statutory amount." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010). The defendant must make this showing with "summary-judgment-type evidence." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018). In this case, Plaintiff calculates the amount in controversy to be $38,346.00 while Staples contends that the figure is $146,933.40. Several disputes between the parties explain this discrepancy. The Court will address each in turn.

### 1. Lost Wages

The parties first dispute the time period over which Plaintiff's lost wages should be calculated. Staples has offered evidence that, at the time of her termination, Plaintiff was a part-time employee who worked twenty hours per week and earned $12.35 per hour. (Dkt. 1-1 [Declaration of Sandra Kruel-Anderson].) Plaintiff does not appear to dispute these figures. By Staples's calculation, Plaintiff's potential lost wages damages amount to around $70,000.00. (NOR at 8.) Staples arrives at this figure by adding (1) Plaintiff's lost wages for the seventy-nine weeks between the date of her termination and the date of removal, (2) Plaintiff's lost wages for the fifty-five weeks between the date Staples was served with the complaint and a potential trial date in July 2020, and (3) a front pay award beginning after the speculative trial date and running for three years. (*Id.*) Plaintiff counters that only $11,609.00 in lost wages is in controversy, representing her wages from the forty-seven weeks between her termination and the end of 2018, the date on which the East Hollywood Staples location she worked at closed. (Mot. at 10–11.) She contends that any lost wages award would be cut off at this date because she would have been laid off. (*Id.*)

First, the Court finds Plaintiff's claim that she would have been laid off at the end of 2018 to be speculative. Although Staples ultimately bears the burden to prove the amount in controversy, "both sides" are obligated to "submit proof" when the amount is disputed. *See Dart Cherokee*, 574 U.S. at 81; *see also Jackson v. Compass Grp. USA, Inc.*, 2019 WL 3493991, at *4 (C.D. Cal. July 31, 2019) (refusing to accept Plaintiff's lost wages calculation because it was not supported by evidence). Plaintiff has submitted nothing to indicate that Staples laid off all of the East Hollywood location employees when it closed that location. Many Staples locations remain open in the Los Angeles area that presumably could have employed Plaintiff. Accordingly, the Court will not cut off Plaintiff's lost wages at the date of the store closure.

The Court next finds that, contrary to Plaintiff's contention, it can consider lost wages up until the date of a potential trial. "If a plaintiff claims at the time of removal that her termination caused her to lose future wages . . . then there is no question that future wages are 'at stake' in the litigation." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018). Plaintiff's complaint alleges that she "has suffered *and continues to suffer* loss of earnings" because of Staples's conduct. (*See* Compl. ¶ 38 [emphasis added].) Because Plaintiff put future wages in controversy, the Court will include lost wages up until the date of trial. Though no trial date has been set, courts have often found that one year from the date of removal is a "conservative estimate of the trial date" in employment cases. *See, e.g.*, *Fisher v. HNTB Corp.*, 2018 WL 6323077, at *5 (C.D. Cal. Dec. 3, 2018). In light of this, the Court finds that the amount in controversy includes Plaintiff's lost wages from the date of her termination on February 7, 2018 to the date of a potential trial on July 14, 2020. This period spans 127 weeks, for a total of $31,369.00.

The Court declines to include a potential front pay award in the amount in controversy calculation. Staples is correct that front pay awards are available for FEHA claims. *See Andrade v. Arby's Rest. Grp., Inc.*, 225 F. Supp. 3d 1115, 1139–40 (N.D. Cal. 2016) (noting that a plaintiff alleging a violation of FEHA may seek both front pay and back pay). However, such awards are not mandatory. *See* Cal. Gov't Code § 12965(c) ("A court *may* grant . . . any relief a court is empowered to grant in a civil action" (emphasis added)). And Staples has not met its burden in establishing that a front pay award is likely in this case. Instead, Staples focuses on the size of a potential front pay award, rather than whether such an award is likely to be ordered. Without more, the Court cannot find that the issuance of a front pay award is more likely than not. *See Davis v. Staples, Inc.*, 2014 WL 29117, at *2 (C.D. Cal. Jan. 3, 2014) (finding that "it is speculative to assume that plaintiff will in fact seek to recover an award of front pay

when front pay is not explicitly demanded in the Complaint"). In sum, the Court will include a total of $31,369.00 in the amount in controversy for Plaintiff's lost wages.

2. **Punitive Damages**

There is also disagreement between the parties as to whether a potential punitive damages can be included in the amount in controversy. "It is well established that punitive damages are part of the amount in controversy in a civil action." *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). But a defendant "must present evidence that punitive damages will more likely than not exceed the amount needed to increase the amount in controversy to $75,000." *Burk v. Med. Sav. Ins. Co.*, 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004). To establish probable punitive damages, "a party asserting federal diversity jurisdiction may . . . introduce evidence of jury verdicts in cases involving analogous facts." *Fisher*, 2018 WL 6323077, at *6.

Staples asks the Court to add $41,792.40 to the amount in controversy to represent a potential punitive damages award. In support of this calculation, Staples includes two verdicts from employment discrimination cases where punitive damages were awarded.[2] (Dkt. 15 at Exs. B, C.) However, both cases are factually distinguishable from the one at issue here, and Staples made no effort to explain why they are similar. *Cf. Collier v. ULTA Salon, Cosmetics & Fragrance, Inc.*, at *3 (C.D. Cal. Dec. 12, 2018) (refusing to include punitive damages in the amount in controversy calculation when Defendant failed to "explain why these cases are factually similar and may be predictive of punitive

---

[2] Staples asks the Court to take judicial notice of several verdicts rendered in other cases. (Dkt. 15.) The Court may take judicial notice of facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under Rule 201(b), a court may take judicial notice of the existence of matters of public record. *See Marsh v. San Diego Cty.*, 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006); *see also MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). Accordingly, Staples's request for judicial notice is GRANTED.

damages in this case"). Though the cases cited by Staples indicate that there is a possibility of punitive damages here, the Court finds that Staples has failed to establish by a preponderance of the evidence that punitive damages should be considered. *See Hill v. Avis Budget Car Rental, LLC*, 2014 WL 1325556, at *3 (C.D. Cal. Apr. 2, 2014) ("[T]he mere possibility of a punitive damages award is insufficient to prove that the amount in controversy requirement has been met." (internal quotation marks omitted)). Accordingly, the Court declines to include a punitive damages figure in the amount in controversy.

### 3. Emotional Distress Damages

Next, Staples asks the Court to add $25,000.00 to the amount in controversy for Plaintiff's emotional distress damages. Emotional distress damages may be considered in determining the amount in controversy. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). Establishing probable emotional distress damages is done the same way as for punitive damages—by introducing evidence of jury verdicts from cases with analogous facts. *See Daley v. Walmart Stores, Inc.*, 2018 WL 3104630, at *5 (C.D. Cal. June 21, 2018). "While settlements and jury verdicts in similar cases can provide evidence of the amount in controversy, the cases must be factually identical or, at a minimum, analogous to the case at issue." *Aguilar v. Wells Fargo Bank, N.A.*, 2015 WL 6755199, at *5 (C.D. Cal. Nov. 4, 2015).

Staples's argument regarding emotional distress damages suffers from similar flaws as its punitive damages argument. Staples "merely cited to a list of other employment cases with large emotional distress damages without analogizing or explaining how those cases are similar to this instant action." *Barrera v. Albertsons LLC*, 2019 WL 1220764, at *3 (C.D. Cal. Mar. 15, 2019); *see also Bezabeh v. Envirobusiness, Inc.*, 2017 WL 4271210, at *5 (C.D. Cal. Sept. 25, 2017) (refusing to include emotional

distress damages when the defendant failed to point to awards in factually analogous cases). Without a more thorough showing from Staples on this issue, the Court cannot conclude that it is more likely than not that Plaintiff will receive an emotional distress award if she prevails. The Court will not include emotional distress damages in the amount in controversy.

### 4. Attorneys' Fees

The Court will next consider to what extent it can include attorneys' fees in its amount in controversy calculation. "[W]here an underlying statute authorizes an award of attorneys' fees . . . such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). Plaintiff's first two causes of action arise under the California FEHA, a statute which permits the prevailing party to recover attorneys' fees. *See* Cal. Gov't Code § 12965(b). Accordingly, the Court must determine the amount of fees to include in the amount in controversy.

The parties dispute whether the Court can include anticipated attorneys' fees in its calculation. District courts in the Ninth Circuit had been split on this issue until recently. *Compare Daley*, 2018 WL 3104630, at *5 (only including fees that had been incurred up until the time of removal) *with Sasso v. Noble Utah Long Beach, LLC*, 2015 WL 898468, at *5 (C.D. Cal. Mar. 3, 2015) (including post removal attorneys' fees because they are part of the total "amount at stake"). The Ninth Circuit resolved the issue by holding that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch*, 899 F.3d at 794. However, courts should still reject a defendant's calculation of future attorneys' fees if it fails to satisfy its burden of proof using "summary-judgment-type evidence." *Id.* at 795.

The Court finds that Staples has met its burden in establishing that $30,000.00 in attorneys' fees are in controversy here. Plaintiff disclosed in its motion to remand that its attorney's current rate is $300.00 per hour. (Mot. at 12.) Staples has also included Central District cases holding that employment cases tend to take between 100 and 300 hours to litigate through trial. *See, e.g.*, *Sasso*, 2015 WL 898468, at *6. Because calculations of attorneys' fees should be "conservative estimates," *see Garcia v. ACE Cash Express, Inc.*, 2014 WL 2468344, at *5 (C.D. Cal. May 30, 2014), the Court finds that 100 hours is appropriate. *See Sasso*, 2015 WL 898468, at *6 (estimating 100 future hours in an employment case). At the current rate of $300.00 per hour, the future fees in this case can be reasonably expected to be $30,000.00. The Court finds that Staples has met its burden in proving this figure.

### 5. Summary

The Court finds that Staples has failed to meet its burden of proving that the amount in controversy exceeds the $75,000.00 jurisdictional requirement. Though it met its burden regarding measures of lost wages and attorneys' fees, when added together, those figures come to only $61,369.00. Since the Court lacks subject matter jurisdiction over this case, Plaintiff's motion to remand is **GRANTED**.[3]

### C. Attorneys' Fees

Plaintiff also requests an award of attorneys' fees and costs for filing this motion. (Mot. at 10–11.) "Courts may award attorney's fees under [28 U.S.C. § 1447(c)] only where the removing party lacked an objectively reasonable basis for seeking removal."

---

[3] Staples argues that Plaintiff's motion should be denied for failure to meet and confer prior to filing the motion, as required by Local Rule 7-3. The Court declines to deny the motion for violation of Local Rule 7-3.

*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The Court finds that Staples had an objectively reasonable basis for removal given that that amount in controversy would have been met had it carried its burden in establishing the probability of a punitive damages award or emotional distress damages award. Plaintiff's request for attorneys' fees and costs is **DENIED**.

**IV. CONCLUSION**

For the following reasons, Plaintiff's motion to remand is **GRANTED**. This action is hereby remanded to Los Angeles County Superior Court.

DATED: September 3, 2019

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE